Le SUEUR, Judge.
This matter is before us on an appeal taken by the plaintiff from judgments of the lower court which sustained a plea of res judicata filed on behalf of defendant Hamrick and granted a motion for summary judgment filed by defendant The Travelers Insurance Company.
The following facts are disclosed by the record: On July 2, 1966, plaintiff, a pedestrian, was struck by an automobile owned and operated by defendant, Hamrick. Hamrick was not covered by any liability insurance and negotiations were entered into between Hamrick and a Mr. Malone, one of the attorneys representing plaintiff. An agreement resulted with Hamrick beginning payments thereunder on September 7, 1966. Due to difficulty Hamrick was having with the Department of Public Safety over his driver’s license, Mr. Malone wrote to the Department of Public Safety on November 30, 1966, advising that: “Mr. Hamrick has worked out an agreement whereby we are currently receiving regular payments from him and thus, we feel that it is no longer necessary for him to post the above bond and we request that you do not suspend Mr. Hamrick’s driving privileges.” On December 29,1966, Mr. Malone wrote Hamrick advising him “that unless you sign or come in to talk to me about signing the Public Safety’s Installment *640 Agreement, we shall have no other alternative but to have your driving privileges suspended.” Hamrick subsequently signed a Department of Public Safety Form SR19, the form stating that Hamrick was to pay $1,000.00 at $20.00 per month starting on December 15, 1966, to effect settlement of claims for damages suffered by Chester J. Bonnecaze. Hamrick added at the bottom: “This statement signed on basis I am not contacted by Mr. Bonnecaze's insurance co. for same damages.” Payments were still being made at the time of trial.
On February 20, 1967, plaintiff filed suit against Hamrick and The Travelers Insurance Company seeking damages for the injuries suffered in the accident of July 2nd. The Travelers Insurance Company was sued as the insurer of plaintiff under the uninsured motorist provision of his policy.
The trial court found that the plaintiff, through his attorney, had negotiated a compromise with the defendant Hamrick, which finding was the basis for sustaining the plea of res judicata and granting the motion for summary judgment.
Plaintiff argues that there was no compromise of his cause of action in spite of the letters of Mr. Malone and the Department of Public Safety Form SR19, it being his contention that the Department of Public Safety Form was merely an offer of settlement of Hamrick, which was contrary to his previous agreement with Mr. Malone because of the stipulation added thereon by Hamrick, which was not completed by him, was not mailed to the Department of Public Safety and receipt of which he was not notified. Plaintiff contended that all funds received by his attorneys from Ham-rick were under the verbal ^agreement originally entered into by Mr. Malone and Hamrick that “we were going to hold him responsible for this [the accident] and we also were going to go after the insurance company on the matter, and that if he decided to make any payments, that these payments would be used as a credit on the uninsured motorist provision.!’ Although Mr. Malone felt that the “offer” of Ham-rick was contrary to their agreement and he did not “accept” it, this information was not communicated to Hamrick, who continued to make payments to plaintiff’s attorneys as per the alleged agreement. These payments were not refused or conditionally accepted but were placed in the attorney’s special account.
A compromise is defined in LSA-C.C. Art. 3071:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be reduced into writing.
The present question, of course, is whether there was a compromise of plaintiff’s right to sue defendant for his injuries based on the negotiations of defendant and plaintiff’s attorney. Apparently an agreement was effected prior to September 7, 1966, because as of that date there is evidence that Hamrick began making regular payments for the accident to plaintiff through plaintiff’s attorney. As of that date, however, the requirement that a compromise must be written was lacking.
On November 30, 1966, Mr. Malone wrote to the Department of Public Safety that “Mr. Hamrick has worked out an agreement whereby we are currently receiving regular payments from him * * * ” so as to allow Hamrick to retain his driver’s license. No mention is made in this letter that the agreement referred to or the payments made under it were anything other than an agreement to settle the claim of plaintiff against defendant. On December 29, 1966, Mr. Malone wrote to Hamrick and advised him “ * * * that unless you sign or come in to talk to me about signing the Public Safety’s Installment Agreement, we shall have no other alternative but to *641 have your driving privileges suspended.” At this time there was unquestionably only a verbal agreement which had not been reduced to writing.
Thereafter, Hamrick signed the Department of Public Safety Form SR19 filed in the record, with the provisions typed in that after Hamrick paid $1,000.00 at $20.00 per month starting on December 15, 1966, he was to be given “a complete and unconditional release from all claims and causes of action” that plaintiff had or may have against defendant. He also added the statement “This statement signed on basis I am not contacted by Mr. Bonnecaze’s insurance co. for same damages.” Defendant claims that the form was prepared by plaintiff’s attorney and sent to him for his signature. Plaintiff’s attorney does not state that he filled out the form and sent it to defendant; he merely states that he received the form from defendant and considered it as an “offer” which he rejected because defendant’s clause at the bottom was contrary to their prior agreement.
We find it more probable that the form was prepared by plaintiff’s attorney and that a compromise was effected when Mr. Hamrick returned the completed form. The fact that plaintiff was not aware of the settlement or did not sign the settlement agreement does not void the compromise. The knowledge of an attorney regarding the facts of a case is imputed to the client. Land v. Acadian Production Corporation of La., 57 F.Supp. 338 (1944), reversed on other grounds at 153 F.2d 151; Girard v. Bacon Lumber Co., 161 So.2d 358 (La.App. 4th Cir. 1964).
Thus the final requirement for a compromise, that it be written, was fulfilled and the compromise completed. There is no sacred form for a compromise as long as it is in writing. Thompson v. Kivett & Reel, 25 So.2d 124 (La.App.1946). We therefore find that there was an agreement between plaintiff’s attorney and Hamrick regarding payments to plaintiff for his accident injuries, that payments were made under such an agreement commencing on September 7, 1966, that such an agreement was referred to in Mr. Malone’s letter of November 30, 1966, to the Department of Public Safety, that this agreement was reduced to writing on the Department of Public Safety’s Form SR19 at the insistence of plaintiff’s attorney and that payments subsequently made were accepted unconditionally by plaintiff’s attorney and deposited in a special bank account, clearly evidencing an agreement of compromise and its execution by the defendant.
Plaintiff cites Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App.1967) as the authority for their statement that “The issue of whether or not a compromise was consummated is one which should be determined on the merits and not on an Exception or Summary Judgment.” The court in Bielkiewicz on page 141 stated: “We therefore conclude that the exception of res judicata must be overruled, because the unilateral ‘release’ executed herein by each plaintiff without shozvn or proved consideration does not constihite a binding bilateral compromise which may be the basis of res judicata.” (Emphasis added.) In the present case there was a “release” executed with consideration given by both parties. Plaintiff relinquished his right to sue and defendant promised to pay a monetary settlement and the present case can therefore be distinguished from Bielkiewicz.
We conclude that the Department of Public Safety Form, considered with the letters of plaintiff’s attorney concerning an agreement between Mr. Malone and defendant, evidenced a compromise that settled the claim of plaintiff against defendant and that this compromise was sufficient basis to maintain Hamrick’s exception of res ju-dicata under the authority of LSA-C.C. Art. 3078.
The court’s conclusion that plaintiff had executed a compromise gave effect to exclusion (b) contained in Part IV (Family Protection Coverage) of plaintiff’s insurance policy issued by The Travelers Insur- *642 anee Company, which states: “This policy does not apply under Part IV: (b) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor;”. (Emphasis added.) Since there was no evidence that Travelers had consented to plaintiff’s compromise and thereby waived the policy exclusion, the trial court properly granted the motion for summary judgment filed by The Travelers Insurance Company, based on the policy provision and its violation by plaintiff’s compromise.
The judgment appealed from is affirmed.
Affirmed.